UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT LOMBARDO,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOSEPH FREEBERN; MARK<br>SCHAARSCHMIDT; EDWIN GARCIA;<br>EUNICE ACERO; TINA RIVERA;<br>NADINE LEONTE; SUZANNE<br>GLADITSCH; CHRISTINA PETITO-<br>THORN; CHRISTIAN ANYENE; LISA<br>RODRIGUEZ; SHRAYAS BAXI;<br>SHONLONDA ROLLINS; MR. FLORES,<br><br>                    Defendants. | No. 16-CV-7146 (KMK)<br><br>OPINION & ORDER |

Appearances:

Scott Lombardo
New Hampton, NY
*Pro Se Plaintiff*

Benjamin Daniel Liebowitz, Esq.
Gillian Breuer Lepore, Esq.
Michael Edward Peeples, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Pro se Plaintiff Scott Lombardo ("Plaintiff") filed the operative Amended Complaint,

pursuant to 42 U.S.C. § 1983, against Joseph Freebern ("Freebern"), Executive Director of Mid-

Hudson Forensic Psychiatric Center ("MHFPC"); Mark Schaarschmidt ("Schaarschmidt"), Head

Chaplain of MHFPC; Edwin Garcia ("Garcia"), Security Hospital Treatment Assistant ("SHTA")

at MHFPC; Eunice Acero ("Acero"), Head of the Kitchen at MHFPC; Tina Rivera ("Rivera"),

Head Cook and Supervisor at MHFPC; Nadine Leonte ("Leonte"), Social Worker at MHFPC;

Suzanne Gladitsch ("Gladitsch"), New York State Office of Mental Health ("OMH"); Christina Petito-Thorn ("Petito-Thorn"), Supervisor SHTA at MHFPC; Christian Anyene ("Anyene"), Social Worker at MHFPC; Lisa Rodriguez ("Rodriguez"), Senior SHTA at MHFPC; Shrayas Baxi ("Dr. Baxi"), Psychiatrist at MHFPC; Shonlonda Rollins ("Rollins"), SHTA at MHFPC; and Mr. Flores ("Flores"), Senior SHTA at MHFPC (collectively, "Defendants"). (*See* Am. Compl. (Dkt. No. 59).)[1] Plaintiff alleges that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution when they denied him grape juice for the Sabbath, access to various religious books and articles, and the right to attend one Passover service and one Eid ul-Fitr feast. (*See id.* at 1.)[2]

Before the Court is Defendants' Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Not. of Mot. To Dismiss (Dkt. No. 65); Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 66).) For the following reasons, Defendants' Motion is granted.

## I. Background

### A. Factual Background

#### 1. Plaintiff's Original Complaint

Plaintiff is a patient at MHFPC, a New York State facility that "provides comprehensive evaluation, treatment, and rehabilitation, pursuant to court order, for offenders who have been found not guilty by reason of mental defect or incompetent to stand trial." (Mar. 30, 2018 Op. &

---

[1] The Amended Complaint sues all Defendants in their individual capacities only. (*See* Am. Compl. 1 n.1.)

[2] The "Facts" section of the Amended Complaint is organized in numbered paragraphs. The "Preliminary Statement, "Causes of Action" and "Relief" sections do not follow the paragraph numbering from the Facts section. The citations to these sections reference the page numbers printed on the bottom of the Complaint.

Order on Defs.' Mot. To Dismiss ("Opinion") 3 (Dkt. No. 54).)  Plaintiff is committed pursuant

to New York Criminal Procedure Law ("CPL") § 330.20, which provides for commitment of an

individual adjudicated "not responsible" for criminal conduct "by reason of mental disease or

defect."  (*Id.* (quoting CPL § 330.20).)  Plaintiff filed his original Complaint on September 12,

2016, bringing fifteen causes of action against thirteen defendants.  (Compl. 11–13 (Dkt. No. 2).)

The Court assumes familiarity with the facts of this case as described in the Court's March 30,

2018 Opinion and Order dismissing Plaintiff's original Complaint.  (*See* Opinion 3–11.)

In Plaintiff's original Complaint, the First and Second Causes of Action involved

Plaintiff's alleged lack of access to grape juice for the Sabbath, and included claims under the

First and Fourteenth Amendments and the New York Mental Hygiene Law ("Mental Hygiene

Law") § 33.02 against Rivera, Acero, Gladitsch, and Freebern.  (Compl. 11.) [3]  The Third,

Fourth, Seventh, Eighth, and Ninth Causes of Action involved alleged denial of access to

Plaintiff's religious books and articles, and included claims under the First, Eighth, and

Fourteenth Amendments and Mental Hygiene Law § 33.02 against Petito-Thorn, Dr. Baxi,

Freebern, and Anyene.  (*Id.* at 11–12.)  The Fifth and Sixth Causes of Action involved Plaintiff's

alleged lack of access to his spiritual advisor, Rabbi Joel Schwab ("Rabbi Schwab"), and

included claims under the First, Eighth, and Fourteenth Amendments and Mental Hygiene Law

§ 33.02 against Leonte.  (*Id.*)  The Tenth and Twelfth Causes of Action involved the alleged

exclusion of Plaintiff from the Passover Seder, and included claims under the First, Eighth, and

Fourteenth Amendments and Mental Hygiene Law § 33.02 against Rollins and Rodriguez.  (*Id.*

---

[3] Like the Amended Complaint, the "Facts" section of the original Complaint is organized in numbered paragraphs, while the "Preliminary Statement, "Causes of Action" and "Relief" sections do not follow the paragraph numbering from the Facts section.  The citations to these sections reference the page numbers printed on the bottom of the Complaint.  (*Id.*

at 12–13.) The Tenth Cause of Action also involved the alleged denial of access to medication and shaving, and included claims under the First, Eighth, and Fourteenth Amendments and Mental Hygiene Law § 33.02 against Rollins. (*Id.* at 12.) The Eleventh Cause of Action involved Plaintiff's alleged receipt of an "X," allegedly a disciplinary mark, and corresponding denial of privileges, and included claims under the Eighth and Fourteenth Amendments and Mental Hygiene Law § 33.02 against Garcia. (*Id.*) The Thirteenth Cause of Action involved the allegedly defective and untimely delivery of the Hanukkah menorah, and included claims under the First, Eighth, and Fourteenth Amendments and Mental Hygiene Law § 33.02 against Flores. (*Id.* at 13.) The Fourteenth Cause of Action involved Plaintiff's alleged unjustified medication increase, and included claims under the Eighth and Fourteenth Amendments and Mental Hygiene Law § 33.02 against Dr. Baxi. (*Id.*) The Fifteenth Cause of Action involved the alleged violation of Plaintiff's right to practice religion, and included claims under the First and Fourteenth Amendments and Mental Hygiene Law § 33.02 against Freebern and Schaarschmidt. (*Id.*) Plaintiff requested compensatory damages of $276,000 and punitive damages of $13,000,000, or $1,000,000 per Defendant. (*Id.* at 13–14.) Plaintiff also requested: (1) "an [i]njunction that all patients at MHFPC choose a religious service, and can't cross over to other services unless the service is an All-Faith service, or unless the patient appeals to the head chaplain to change faiths," in "accordance with DOC[C]S Directive 4202"; (2) "an [i]njunction that if any patient is denied any religious service, that a full report [be issued] as to why and who authorized, and the justification of the denial of service"; (3) "an [i]njunction that if patients have special ritualistic religious items, such as Tifillin, etc. or books, regardless of hard-cover or soft-bound, that a safe place be made for articles and books, and access be granted as needed for said items"; and (4) "an [i]njunction that all special holiday items, such as Hanukkah [m]enorah or

4

Christmas [t]ree, be inspected annually, or as needed per use, before and after each use, and that a replacement in good working condition be promptly made." (Compl. 13–14 & n.30.)

### 2. Dismissal of Plaintiff's Original Complaint

On March 30, 2018, the Court granted Defendants' Motion To Dismiss the original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See generally* Opinion.) At the outset, the Court dismissed all of Plaintiff's claims under Mental Hygiene Law § 33.02 on the basis that it is a regulatory statute and "does not confer a private right of action." (*Id.* at 17–18.)

The Court then addressed Plaintiff's claims under the First Amendment. On Plaintiff's claim that he was denied grape juice and offered cranberry juice as an alternative on Fridays and Saturdays in connection with his observation of the Sabbath, the Court found that Defendants, citing budgetary constraints, had a "legitimate penological interest[] to no longer provide Plaintiff grape juice" and that Plaintiff "ha[d] not satisfied his burden to show the existence of obvious, easy alternatives to provide Plaintiff grape juice," noting that despite the deprivation, Plaintiff remained "generally free to practice Judaism." (*Id.* at 22–24 (alteration and quotation marks omitted).) The Court also dismissed Plaintiff's claim that he was denied access to religious items, including having his hard-cover Siddur book replaced with a different soft-cover prayer book and having his access to his Tifillin and prayer shawl temporarily withheld. On this claim, the Court similarly concluded that Defendants, who claimed the items were temporarily restricted after Plaintiff was transferred to a new ward and placed on "close observation status" after he allegedly made threats, had "proffered a valid explanation" based on its penological interest in facility security that justified the deprivations, and that Plaintiff "failed to rebut" this explanation. (*Id.* at 24–25.) On Plaintiff's claim based on the interruption of a single conversation with Rabbi Schwab, the facility's Jewish Chaplain, the Court found that "[t]he

singular interruption was at best a de minimus burden on Plaintiff's Free Exercise rights, and fails to state a claim." (*Id.* at 26.) On Plaintiff's claim based on delivery of a broken menorah during Hanukah, the Court ruled that Plaintiff failed to allege that this substantially burdened his religious beliefs, and that the allegations at most demonstrate "mere negligence" by Defendants, which "alone will not carry a § 1983 action." (*Id.* at 26–28.)

Regarding denial of Plaintiff's attendance at the Passover Seder, the Court found that Plaintiff "plausibly alleged that Passover was central or important to his faith such that missing even one service could constitute a substantial burden." (*Id.* at 29 (quotation marks omitted).) However, Defendants argued that Plaintiff had been "too agitated" to attend based on his earlier refusal to take his medication and his allegedly threatening a staff member, and the Court found that Defendants acted pursuant to the legitimate penological interest of keeping Plaintiff, as well as other patients and staff at the facility, safe. (*See id.*) The Court also observed that Plaintiff had an alternative means of exercising the burdened right, as evidenced by the fact that he conducted his own Passover Seder in his room the next day. (*See id.* at 30.) The Court therefore found Plaintiff failed to state a claim based on prevention of his attendance at the Passover Seder. Regarding Plaintiff's claim that he was denied attendance at the Eid ul-Fitr Feast, the Court found that Plaintiff failed to allege personal involvement by Defendants Freebern and Schaarschmidt and dismissed the claim. (*Id.* at 30–33.)

Next, the Court dismissed Plaintiff's claims, raised for the first time in his opposition papers, that all the alleged conduct violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (*See id.* at 33–35.) The Court dismissed Plaintiff's RLUIPA claims for money damages because "RLUIPA does not authorize claims for monetary damages against state officers," and his claims for injunctive relief because the underlying "Free Exercise violations he

alleged . . . are dismissed on the merits without prejudice and do not specifically allege claims under RLUIPA." (*Id.* at 35 & n.19 (citation and quotation marks omitted).)

The Court also dismissed all claims brought under the Eighth Amendment on the basis that Plaintiff "was not a convicted prisoner." (*Id.* at 35.) However, because Plaintiff was "involuntarily committed" at the time of the alleged conduct, the Court analyzed his deliberate indifference claims as a conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment. (*Id.* at 36.) The Court then construed Plaintiff's Complaint as alleging Fourteenth Amendment claims based on three events: "(1) Rollins not allowing Plaintiff to shave and withholding medication; (2) Garcia giving Plaintiff an 'X'; and (3) Dr. Baxi subsequently increasing Plaintiff's medication." (*Id.* at 39.) As to the first event, the Court found that one-time denial of a shave "does not amount to a constitutional violation," and that Plaintiff did not plead "any facts suggesting that Rollins did not allow him to take his medicine," but rather that Plaintiff refused to take his medication until he received a shave. (*Id.* at 40.) With respect to the second event, the Court found that being given an X, and "thus causing Plaintiff to lose his privilege level," did not deprive Plaintiff of a constitutionally-protected liberty interest and therefore failed to state a claim. (*Id.* at 41.) As to the third event, the Court ruled that "Plaintiff's disagreement with Dr. Baxi regarding the increase of his medication" does not amount to "a substantial departure from accepted professional judgment, practice, or standards" as required to state a deliberate indifference claim. (*Id.* at 42–43.) Plaintiff's Complaint was thus dismissed in its entirety without prejudice to file an amended complaint.

### 3. Plaintiff's Amended Complaint

On April 27, 2018, Plaintiff filed an Amended Complaint attempting to cure the deficiencies in his prior Complaint. (*See* Am. Compl.) Plaintiff's Amended Complaint brings

fourteen causes of action against the same thirteen defendants. Plaintiff alleges largely the same claims as his original Complaint, except that Plaintiff now brings his claims against Defendants only in their individual capacities, (*see id.* at 1 n.1), has withdrawn his claims under the New York State Mental Hygiene Law, and has added a cause of action that states, "[t]he actions of all [D]efendants violated Plaintiff's right to practice his religion without harassment under the Eighth and Fourteenth Amendments," (*id.* at 14). Plaintiff requests the same monetary and injunctive relief. (*See id.* at 14–15).[4]

The Amended Complaint includes several additional assertions clarifying Plaintiff's allegations, while retaining all factual allegations from the original Complaint. In connection with his claim that he was denied grape juice, Plaintiff now adds that "[w]ine, or grape juice, is a mandatory ritual to begin and end the Sabbath," and that "[R]abbi Schwab . . . told Plaintiff that to say the blessing . . . requires wine or grape juice, and not cranberry or other type of juice." (Am. Compl. ¶ 3.) Plaintiff also states that "Plaintiff's relative[s] live in the State of Nevada, which to send grape juice or other provisions would bring a burden to them," and that although he has friends in New York State they "are under no obligation to provide grape juice to Plaintiff." (*Id.* ¶ 9.) Plaintiff also "disagrees" with Defendants' proffered legitimate penological objective justifying the substitution of cranberry juice for grape juice due to budgetary constraints on the basis that Plaintiff's access to grape juice has since been restored, noting that "[i]f grape juice can be afforded now, it could have been afforded then." (*Id.* ¶ 11 n.12.)

---

[4] Plaintiff includes an Appendix to his Amended Complaint that provides a detailed breakdown of the days Plaintiff was deprived of access to his religious books and corresponding damages. (*See* Am. Compl. Appendix A ("App'x A").) In the Appendix, Plaintiff appears to seek $10,000 for each day that he was deprived of his Tanach, but his Amended Complaint seeks only $1,000 per day for the same deprivation. (*Compare* Am. Compl. 15 *with* App'x A.) Because the Court grants Defendants' Motion To Dismiss the Amended Complaint, it is not necessary to determine which amount Plaintiff sought to recover for his claims.

Regarding his claim that he was denied access to his religious books and items, Plaintiff now adds that he "reads his books as required by Jewish laws and traditions, and wear[s] his Tifillin and prayer shawl regularly." (*Id.* ¶ 14.) Plaintiff also asserts that Dr. Baxi was "in direct violation of Plaintiff's Civil Rights to practice his religion in the least restrictive environment" when Dr. Baxi told Plaintiff he could not have his religious items returned to him until he "get[s] off Close Observation status" after being transferred to a more restrictive ward of the facility. (*Id.* ¶ 22.)

With respect to the interruption of his conversation with Rabbi Schwab, Plaintiff adds that "it was possible to have Plaintiff called out to the hallway to speak to [R]abbi Schwab," and that "Plaintiff was experiencing emotional distress because of everything that was happening." (*Id.* ¶ 19 n.17.) Regarding his claim that the facility provided a broken menorah for Hanukah, Plaintiff adds that the menorah "was a plug-in type, which is in violation of hospital policy as well as a safety concern," and that in previous years a battery-operated menorah was provided that "always worked properly." (*Id.* ¶ 26.) Plaintiff also notes that "[a] broken Menorah with a plug could also start a fire which is . . . an act of negligence on the part of [D]efendants." (*Id.* ¶ 26 n.22.)

In connection with his claim based on receiving an "X" for threatening a staff member, Plaintiff now adds that he "never threatened Defendant Garcia, but believes Garcia was being malicious." (*Id.* ¶ 44.) Plaintiff also adds the allegation that "[u]pon information and belief, . . . Defendant Mark Schaarschmidt made a policy restricting who can and can't go to religious feasts" in connection with the denial of his attendance at the Eid ul-Fitr Feast. (*Id.* ¶ 52.) Finally, Plaintiff asserts that as someone "involuntarily committed to State custody," he has "a

constitutionally-protected right to practice his religion without harassment by [D]efendants mentioned herein." (*Id.* ¶ 53.)

B. Procedural Background

Plaintiff filed the original Complaint on September 12, 2016. (*See* Compl.) The same day, Plaintiff requested to proceed in forma pauperis, (*see* Dkt. No. 1), which the Court granted on November 29, 2016, (*see* Dkt. No. 3). On June 6, 2017, with leave of the Court, Defendants moved to dismiss the original Complaint. (*See* Defs.' Mot. To Dismiss the Original Compl. ("Defs.' Orig. Mot.") (Dkt. No. 37); Defs.' Mem. of Law in Support of Mot. To Dismiss the Original Compl. ("Defs.' Orig. Mem.") (Dkt. No. 38).) On July 7, 2017, Plaintiff filed an Opposition with accompanying exhibits. (*See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss the Original Compl. ("Pl.'s Orig. Mem.") (Dkt. No. 43).)[5] On July 21, 2017, Defendants filed a Reply. (*See* Defs.' Reply in Further Supp. of Mot. To Dismiss the Original Compl. ("Def.s' Orig. Reply") (Dkt. No. 46).)

On March 30, 2018, the Court issued an Opinion and Order dismissing Plaintiff's Complaint in its entirety without prejudice. (*See* Opinion.) On April 27, 2018, Plaintiff filed an Amended Complaint. (*See* Am. Compl.) On May 14, 2018, Defendants filed a letter seeking leave to file a Motion To Dismiss and requesting a premotion conference. (*See* Dkt. No. 60.) On May 23, 2018, Plaintiff filed a letter in opposition. (*See* Dkt. No. 63.) The Court concluded that briefing on the Motion To Dismiss was appropriate, and set a briefing schedule. (*See* Dkt. No. 62.)

---

[5] On June 23, 2017, Plaintiff sought an extension of time to file papers opposing the Motion. (*See* Dkt. No. 40.) The Court granted the request. (*See* Dkt. No. 41.)

On June 25, 2018, Defendants filed the instant Motion To Dismiss and accompanying Memorandum of Law. (*See* Not. of Mot. To Dismiss; Defs.' Mem.) On July 25, 2018, Plaintiff filed a Memorandum of Law in Opposition to Defendants' Motion. (Mem. of Law in Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Mem") (Dkt. No. 72).)[6] On August 16, 2018, Defendants filed a Reply. (Defs.' Reply Mem. of Law in Further Supp. of Mot. To. Dismiss ("Defs.' Reply") (Dkt. No. 69).)

## II.  Discussion

### A.  Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its

---

[6] Plaintiff's timely filed his Opposition on July 25, 2018, but only odd numbered pages were included due to a filing error. (*See* Dkt. No. 68.) Plaintiff filed a complete version of his submission on December 28, 2018, which the Court will consider in deciding Defendants' Motion. (*See* Pl.'s Mem.)

face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ."  (alteration and quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted); *see also Farzan v.*

*Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted).

B.  Analysis

1.  First Amendment Free Exercise Claims

a.  Applicable Law

Defendants argue that the Amended Complaint still fails to state a Free Exercise claim under the First Amendment. (*See* Defs.' Mem. 6–14.) The Free Exercise Clause of the First Amendment is an "unflinching pledge to allow our citizenry to explore . . . religious beliefs in accordance with the dictates of their conscience." *Patrick v. LeFevre,* 745 F.2d 153, 157 (2d Cir. 1984). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003), which includes the right to participate in religious services, *see*

13

*Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993).[7]  A prisoner's First Amendment rights, however, are "[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system."  *Ford*, 352 F.3d at 588 (quotation marks omitted); *see also Weathers v. Rock*, No. 12-CV-1301, 2014 WL 4810309, at *4 (N.D.N.Y. Sept. 23, 2014) (explaining that the right of inmates to freely exercise a chosen religion "is not limitless, and may be subject to restrictions relating to legitimate penological concerns").  Accordingly, a prisoner's Free Exercise claims are "judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  *Ford*, 352 F.3d at 588 (quotation marks omitted).

"To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs."  *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alteration and quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.").[8]  In determining

_____

[7] "No party has suggested that the analysis for a free exercise claim by an involuntarily committed individual is different from the analysis applied to prisoners' free exercise claims.  Accordingly, the free exercise analysis applied in the prison context will apply here."  *Lombardo*, 2008 WL 2543573, at *6 n.6.

[8] The Second Circuit has acknowledged that "[i]t has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."  *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (quotation marks omitted).  The Second Circuit chose not to confront this question—or rather, not to alter the previous assumption that the substantial burden test is a threshold question.  *Id.* at 220–21.  This Court has already chosen to follow the analysis in *Holland* and thus will proceed under the assumption that the substantial burden test is still valid.  *See Gilliam v. Baez*, No. 15-CV-6631, 2017 WL 476733, at *4 n.5 (S.D.N.Y. Feb. 2, 2017).

whether a belief is "sincere," "an individual . . . need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (citation, alteration and quotation marks omitted). The relevant inquiry is not whether, as an objective matter, the belief is "accurate or logical." *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996).

A substantial burden exists "where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *McEachin v. McGuinnis*, 357 F.3d 197, 202 n.4 (2d Cir. 2004) (citations, alterations and quotation marks omitted); *see also Gilliam v. Baez*, No. 15-CV-6631, 2017 WL 476733, at *5 (S.D.N.Y. Feb. 2, 2017) (same). The Second Circuit has further specified that "[t]he relevant question in determining whether [the plaintiff's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the plaintiff's religious] practice." *Ford*, 352 F.3d at 593–94. Once the plaintiff satisfies this burden, the defendants then "bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct," although "the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (alterations and quotation marks omitted).

Defendants do not contest the sincerity of Plaintiff's religious beliefs. The Court, therefore, will assume for the purpose of resolving the instant Motion that Plaintiff's religious beliefs are sincerely held.

The Court turns, then, to whether Plaintiff's Amended Complaint has adequately alleged that his ability to exercise his religious beliefs was substantially burdened. Construing his submissions liberally, Plaintiff alleges six ways his Free Exercise of his religion was burdened: (1) he was deprived of grape juice; (2) he was denied access to his religious books and items; (3)

his conversation with Rabbi Schwab was interrupted; (4) the menorah was broken; (5) he was unable to attend the Passover Seder; and (6) he was barred from attending the Eid ul-Fitr feast, even though non-members of the Jewish faith were allegedly allowed to attend the Passover Seder. (*See generally* Am. Compl.) For the reasons that follow, the Court concludes that Plaintiff's Amended Complaint fails to cure the deficiencies of his initial Complaint. Therefore, none of Plaintiff's allegations states a claim for violation of the Free Exercise Clause.

### b. Denial of Grape Juice

Defendants argue that Plaintiff being provided cranberry instead of grape juice for his religious practices fails to state a claim against Rivera, Acero, Gladitsch, or Freebern for violation of Plaintiff's Free Exercise rights. (Defs.' Mem. 7–9.)[9] The Court dismissed this claim in the original Complaint on the basis that "Defendants have satisfied 'the relatively limited

---

[9] Plaintiff's allegation that Gladitsch forwarded Plaintiff's concerns regarding the lack of grape juice to the clinical director fails to sufficiently allege Gladitsch's personal involvement, and the claim against her in the Amended Complaint is therefore dismissed for the same reasons the Court dismissed this claim in its March 30, 2018 Opinion. (*See* Opinion 21 n.13). *See also Phillip v. Schriro*, No. 12-CV-8349, 2014 WL 4184816, at *5 (S.D.N.Y. Aug. 22, 2014) ("A supervisory official is not deemed to have been personally involved solely by virtue of having received a letter or complaint from a prisoner and having referred it to the appropriate department for investigation."); *Rush v. Fischer*, 923 F. Supp. 2d 545, 552 (S.D.N.Y. 2013) (concluding that the allegation that the defendants "received multiple letters from [the plaintiff] and referred the matter to others . . . alone is insufficient to constitute the[ir] personal involvement"), *aff'd sub nom Rush v. Canfield*, 649 F. App'x 70 (2d Cir. 2016); *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) ("The general rule is that if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter."); *see also Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (concluding at the summary judgment stage that the plaintiff's letters to the DOCCS Commissioner, one of which he referred to a subordinate for decision and the other of which he responded to "by informing [the plaintiff] that [the subordinate] had rendered a decision," were insufficient to "demonstrate the requisite personal involvement" of the Commissioner). This is because supervisors "receive large numbers of letters from inmates and they delegate subordinates to handle them. If courts found personal involvement every time a supervisor forwarded a complaint to a subordinate, the [personal involvement] requirement would lose all meaning." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (citations and quotation marks omitted).

burden of identifying the legitimate penological interests that justify the impinging conduct,'"

namely, that MHFPC "switched food vendors . . . to save money and grape juice was no longer

available." (Opinion 21–22 (quoting *Salahuddin*, 467 F.3d at 275).) The Court made this

determination by applying the factors the Supreme Court outlined in *Turner v. Safley*, 482 U.S.

78 (1987):

> whether the challenged regulation or official action has a valid, rational connection
> to a legitimate governmental objective; whether prisoners have alternative means
> of exercising the burdened right; the impact on guards, inmates, and prison
> resources of accommodating the right; and the existence of alternative means of
> facilitating exercise of the right that have only a de minimis adverse effect on valid
> penological interests.

*Holland*, 758 F.3d at 222–23 (quotation marks omitted). The rule requiring a legitimate

penological interest is equally applicable to individual actions of prison personnel as it is to

generally-applied policies or regulations. *See Salahuddin*, 467 F.3d at 274 n.4 ("An

individualized decision to deny a prisoner the ability to engage in religious exercise is analyzed

in the same way as a prison regulation denying such exercise.").

In its Opinion, the Court found that budget constraints "are legitimate penological

interests to no longer provide Plaintiff grape juice that satisfies the first and third *Turner* factors,"

and noted that "MHFPC's choice of food vendor and allocation of resources is entitled to

substantial deference, even if Plaintiff himself doubts how much more grape juice costs than

cranberry juice." (Opinion 22.) Further, the Court found that "[t]he second factor—the

availability of alternative means of exercising the right to free exercise of religion—also supports

the provision of cranberry over grape juice," noting that this factor "is not to be narrowly

construed as pertaining to particular practices, such as having . . . grape juice." (*Id.* at 23

(quoting *Henry v. Schriro*, No. 10-CV-7573, 2011 WL 3370394, at *3 (S.D.N.Y. Aug. 2,

2011)).) Finally, with regard to the fourth factor, "the existence of alternative means of

facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests," the Court found that "Plaintiff has not satisfied his burden to show the existence of obvious, easy alternatives to provide Plaintiff grape juice . . . such as deliveries from his family, friends, or his community, but instead merely points out that the alternatives suggested in *Henry* would not work under his circumstances." (*Id.* at 23–24 (alteration, citation, and quotation marks omitted).)

Plaintiff's Amended Complaint alleges no new facts that would warrant a different result. Plaintiff's allegations are substantively the same as the original Complaint. However, Plaintiff has added the assertion that wine or grape juice is "a mandatory ritual to begin and end the Sabbath," and that Rabbi Schwab told Plaintiff that "to say the blessing over wine requires wine or grape juice, and not cranberry or other type of juice." (Am. Compl. ¶ 3.) Plaintiff also now asserts that "Plaintiff's relative[s] live in the State of Nevada, which to send grape juice or other provisions would bring a burden to them," and that "Plaintiff ha[s] friends in New York State that are under no obligation to provide grape juice to Plaintiff." (*Id.* ¶ 9.) Finally, Plaintiff's Amended Complaint states that he "disagrees" with Defendants' position that cranberry juice was substituted for budgetary reasons, stating that Plaintiff's access to grape juice was restored on April 24, 2015 and that "[i]f grape juice can be afforded now, it could have been afforded then." (*Id.* ¶ 11 n.12.)

Plaintiff has failed to add sufficient facts to state a First Amendment claim for the substitution of cranberry juice for grape juice. Plaintiff's new assertion that Rabbi Schwab told him that grape juice is required for the Sabbath does not fundamentally change the facts that were before the Court when it issued its Opinion dismissing Plaintiff's original Complaint. Even assuming Rabbi Schwab told Plaintiff that cranberry juice is not an acceptable substitute, the law

views Plaintiff's right to free exercise of his religion "sensibly and expansively," *Thornburgh v. Abbott*, 490 U.S. 401, 417 (1989), and it is "not to be narrowly construed as pertaining to particular practices, such as having . . . grape juice," *Henry*, 2011 WL 3370394, at *3. While it is true that "[w]hether a particular practice is religiously mandated is surely relevant to resolving whether a particular burden is substantial," *Ford*, 352 F.3d at 593, the Court's Opinion dismissing Plaintiff's claim "assum[ed] Plaintiff ha[d] made a threshold showing" that the substitution of cranberry juice substantially burdened his beliefs but found that Defendants had nonetheless satisfied their obligation to identify "legitimate penological interests that justify the impinging conduct," (Opinion 21–22). The Court also addressed Plaintiff's skepticism of Defendants' proffered justification, which he referenced in his Opposition to Defendants' original Motion To Dismiss, (Pl.'s Orig. Mem. 5), stating that "MHFPC's choice of food vendor and allocation of resources is entitled to substantial deference, even if Plaintiff himself doubts how much more grape juice costs than cranberry juice," (Opinion 22). Plaintiff's new allegations therefore fail to rebut Defendants' identification of legitimate penological interests justifying the infringement on Plaintiff's right to practice his religion.

Finally, Plaintiff's assertions that it would unduly burden his family members to send him grape juice and that his local friends are under no obligation to provide him with grape juice, which he also raised in his Opposition to Defendants' original Motion To Dismiss, (Pl.'s Orig. Mem. 5), do not satisfy his burden to show "[t]he existence of obvious, easy alternatives," *Thornburgh*, 490 U.S. at 418, but instead "merely point[] out that the alternatives suggested in *Henry*[, 2011 WL 3370394, at *3,] would not work under his circumstances," (Opinion 23–24). Plaintiff fails to identify any easy alternatives that MHFPC could have implemented without

sacrificing legitimate penological interests. Therefore, Plaintiff's claim based on denial of access to grape juice for the Sabbath is dismissed.

<u>c. Denial of Access to Religious Items</u>

Defendants argue that Plaintiff's claims against Petito-Thorn, Baxi, Freebern, and Anyene for violation of his Free Exercise rights by restricting his access to certain religious books and articles should also be dismissed. (Defs.' Mem. 9–11.) In dismissing these claims in the original Complaint, the Court assumed Plaintiff had made a threshold showing that the conduct substantially burdened his sincerely held religious beliefs, but found that Defendants satisfied their burden to identify a legitimate penological interest—specifically, preserving Plaintiff's safety and the safety of staff and other MHFPC patients—and that Plaintiff failed to rebut Defendants' valid explanation. (*See* Opinion 24–25.)

Plaintiff adds two new allegations in his Amended Complaint relating to denial of his access to religious books and items. Plaintiff now asserts that "Plaintiff reads his book as required by Jewish laws and traditions, and wear[s] his Tiffillin and prayer shawl regularly," (Am. Compl. ¶ 14), and alleges that by telling Plaintiff his religious items would not be returned until he got off "Close Observation status" after his transfer to a different ward, Dr. Baxi was "in direct violation of Plaintiff's Civil Rights to practice his religion in the least restrictive environment," (*id.* ¶ 22).

Plaintiff's newly included statement that he uses the religious items "as required by Jewish laws and traditions" goes to whether the denial substantially burdened Plaintiff's religious beliefs. However, as discussed, in dismissing Plaintiff's claims in the original Complaint the Court assumed Plaintiff's claim made a threshold showing that Defendants substantially burdened his sincere religious beliefs, but found Defendants proffered a legitimate penological

interest that justified the deprivation, which remained unrebutted. Plaintiff's Amended Complaint does not include facts that rebut the legitimacy of the justification, identify alternatives of facilitating the exercise of Plaintiff's right, or otherwise alter the assessment the Court made under the *Turner* factors in its Opinion. Further, Plaintiff's allegation that Dr. Baxi was "in direct violation of Plaintiff's Civil Rights to practice his religion in the least restrictive environment," (*id.*), is a legal conclusion, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation marks omitted); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (quotation marks omitted)). Because Plaintiff alleges no new facts that rebut Defendants' identified legitimate penological interest, his claim based on denial of access to his religious books and items is dismissed.

### d. Interruption of Plaintiff's Conversation with Rabbi Schwab

Defendants argue that Plaintiff has still failed to sufficiently allege that Leonte violated Plaintiff's Free Exercise rights by interrupting his conversation with Rabbi Schwab. (Defs.' Mem. 11.) The Court dismissed this claim in Plaintiff's original Complaint on the basis that "[t]he singular interruption was at best a de minimus burden on Plaintiff's Free Exercise rights, and fails to state a claim." (Opinion 11.) Plaintiff's only new assertion in support of this claim is that when Plaintiff's conversation with Rabbi Schwab was interrupted and he was told by Defendant Leonte, "[t]his is group time," is that "[t]he group was watching 'Law and Order' which is geared for CPL [§] 730 patients," while Plaintiff "is a CPL § 330.20." (Am. Compl. ¶19 n.17.) Plaintiff goes on to say that "it was possible to have Plaintiff called out to the hallway to speak to [R]abbi Schwab," and that Plaintiff "was experiencing emotional distress because of

everything that was happening." (*Id.*) However, whether Plaintiff was asked to watch a television show not geared for his particular patient group, and whether a conversation with Rabbi Schwab would have helped Plaintiff with his emotional distress, are not relevant to whether Plaintiff's religious beliefs were substantially burdened. Furthermore, Plaintiff raised this argument in his Opposition to Defendants' original Motion To Dismiss, (*see* Pl.'s Orig. Mem. 3), and the Court nonetheless dismissed Plaintiff's claim, (*see* Opinion 26). Thus, the Court dismisses this claim.[10]

### e. Broken Menorah

Defendants argue that Plaintiff still fails to state a First Amendment claim against Flores for his alleged delivery of a broken menorah to the ward. (Defs.' Mem. 13–14.) The Court dismissed this claim in the original Complaint because Plaintiff "d[id] not explain how the state of the menorah put substantial pressure on him to modify his behavior and to violate his beliefs," nor allege that a "properly functioning menorah is considered central or important to his religious practices." (Opinion 26 (citations and quotation marks omitted).) The Court concluded that "[a]s alleged, the broken menorah represents the type of 'inconvenience[] so trivial that [it is] most properly ignored.'" (*Id.* (quoting *McEachin*, 357 F.3d at 203 n.6).) Furthermore, the Court reasoned that any denial of Free Exercise rights was "not intentional or malicious, but appear[s] to at most be the result of negligence by prison officials," and therefore fails to form the basis of

---

[10] With respect to this and several other claims, Plaintiff asserts that Defendants' arguments are barred by the "one motion rule." (Pl.'s Mem. 5 (citing *Vinar v. Litman*, 972 N.Y.S.2d 704 (App. Div. 2013)); *see also id.* at 6, 11.) The caselaw cited by Plaintiff holds that "successive motions for summary judgment should not be entertained, absent a showing of newly discovered evidence or other sufficient cause." *Vinar*, 972 N.Y.S.2d at 706 (citation and quotation marks omitted). Because there are no summary judgment motions at issue, Plaintiff's arguments are inapplicable. Moreover, Defendants have filed only one motion to dismiss for each of Plaintiff's two complaints.

a claim under the First Amendment. (*Id.* at 27 (quoting *Tafari v. Annets*, No. 06-CV-11360, 2008 WL 2413995, at *16 (S.D.N.Y. June 12, 2008)), *adopted by* 2008 WL 4449372 (S.D.N.Y. Oct. 2, 2008), *aff'd sub nom.*, 363 F. App'x 80 (2d Cir. 2010).)

Plaintiff includes two new allegations in his Amended Complaint relating to the broken menorah. Plaintiff alleges that "[t]he menorah was a plug-in type, which is in violation of hospital policy as well as a safety concern," and that in previous years "Plaintiff's ward always received a battery-operated [m]enorah which always worked properly." (Am. Compl. ¶ 26.) Plaintiff also states that "[a] broken [m]enorah with a plug could also start a fire which is also an act of negligence on the part of [D]efendants." (*Id.* ¶ 26 n.22.) Neither of these new allegations relates to the Plaintiff's ability to practice his religion. Furthermore, Plaintiff not only fails to rebut the Court's conclusion that Flores was at most negligent; Plaintiff specifically alleges that Flores's conduct was negligent, rather than intentional or malicious as required to state a First Amendment claim. (*Id.*; *see also* Pl.'s Mem. 3 (alleging "neglect by [D]efendants Rollins, Freebern, Schaarschmidt, and Flores").) Finally, Plaintiff raised his argument regarding the unsafe condition of the plug-in Menorah in his Opposition to Defendants' original Motion To Dismiss, (*see* Pl.'s Orig. Mem. 4), and the Court dismissed Plaintiff's claim, (Opinion 27–28). Plaintiff therefore has failed to state a claim based on the delivery of a broken Menorah, and this claim is dismissed.

### f. Denial of Attendance at the Passover Seder

Defendants argue that Plaintiff has failed to allege that Rodriguez and Rollins substantially burdened Plaintiff's religion by causing him to miss the Passover Seder. (Defs.'

Mem. 11–13.)[11]  In its March 30, 2018 Opinion, the Court, "construing Plaintiff's submissions liberally and drawing all reasonable inferences from the factual allegations in Plaintiff's favor," found that Plaintiff had "plausibly alleged that Passover was 'central or important to' his faith such that missing even one service could constitute a substantial burden."  (Opinion 29 (quoting *Ford*, 352 F.3d at 593–94).)  However, the Court found that Defendants met their burden of identifying a legitimate penological interest—the safety of Plaintiff and of other patients and staff—that justified the impinging conduct.  (*See id.*)  Defendants argued that Defendant Rodriguez "felt Plaintiff was 'too agitated' after Plaintiff had been demanding to shave, refused to take his medication, and received an 'X' for allegedly threatening a staff member."  (*Id.*)  Furthermore, the Court found that Plaintiff had indicated that he had an alternative means of exercising the right because "he conducted his own Passover Seder in his room the next day."  (*Id.* at 30.)

The only allegation that Plaintiff adds with respect to the prevention of his attendance at the Passover Seder is that he denies ever threatening Defendant Garcia, which resulted in receiving an "X" and a corresponding loss of certain unspecified privileges.  Specifically,

---

[11] As explained in the Court's Opinion, (*see* Opinion 28 n.18), Plaintiff's claim against Rollins should be dismissed because Plaintiff has not alleged that Rollins was personally involved in making the decision that Plaintiff would not attend Passover Seder, *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation.").  Rather, Plaintiff has alleged that Rollins refused to let Plaintiff shave and allegedly denied him his medication. (Compl. ¶¶ 38–41.)  Those claims are addressed below.  In his Opposition, Plaintiff does argue that Rollins "made a conscious decision to thwart Plaintiff from shaving and going to the Seder." (Pl.'s Mem. 7.)  However, Plaintiff's attendance at the Seder was not conditional on his receiving a shave, but on taking his medicine, (*see id.*), which Plaintiff admits he initially refused to do, (*see* Am. Compl. ¶ 40).  Plaintiff asserts that he ultimately did take his medication, but that Rodriguez, and not Rollins, still prevented him from attending the Seder because he was "too agitated."  (*Id.* ¶¶ 45–46.)

Plaintiff now alleges that he "never threatened Defendant Garcia, but believes Garcia was being malicious." (Am. Compl. ¶ 44.) Construing Plaintiff's Amended Complaint liberally, the Court reads this newly included statement as alleging that Garcia fabricated the threat he says Plaintiff made for a malicious purpose. However, Plaintiff does not allege that the malicious purpose was to prevent Plaintiff from attending the Passover Seder, but merely that Garcia was generally "being malicious." Plaintiff also does not allege that Garcia was involved in the decision not to allow Plaintiff to attend the Passover Seder, nor that the loss of his privilege level deprived him of any constitutionally-protected liberty interests. Finally, Plaintiff raised this argument in his Opposition to Defendants' original Motion To Dismiss, (*see* Pl.'s Orig. Mem. 2–3), and the Court nevertheless dismissed Plaintiff's claim. Plaintiff has therefore included no new allegations in his Amended Complaint to rebut Defendants' proffered safety justification for preventing Plaintiff from attending the Seder. The Court therefore dismisses this claim.

### g. Claim Regarding Who Could Attend the Eid ul-Fitr and Passover Feasts

Defendants argue that any claims against Freebern and Schaarschmidt regarding the Eid ul-Fitr Feast should be dismissed because Plaintiff has failed to allege any burden on his religious beliefs. (Defs.' Mem. 14.) The Court originally dismissed these claims for failure to sufficiently allege personal involvement. (Opinion 32–33.) In an attempt to cure this deficiency, Plaintiff now alleges that "[u]pon information and belief, the head chaplain of MHFPC . . . Defendant Mark Schaarschmidt made a policy restricting who can and can't go to religious feasts." (Am. Compl. ¶ 52.)[12]

---

[12] Plaintiff alleges no new facts with respect to Freebern's personal involvement.

The personal involvement of a defendant may be demonstrated where "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). However, "[c]onclusory allegations that there was such a policy or custom, without identifying or alleging supporting facts, is insufficient to state a claim." *Maynard v. City of New York*, No. 13-CV-3412, 2013 WL 6667681, at *4 (S.D.N.Y. Dec. 17, 2013); *see also Lindsey v. Butler*, 43 F. Supp. 3d 317, 329 (S.D.N.Y. 2014), *modified in part on reconsideration*, No. 11-CV-9102, 2014 WL 5757448 (S.D.N.Y. Nov. 5, 2014) ("Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient."); *Burgis v. Dep't of Sanitation*, No. 13-CV-1011, 2014 WL 1303447, at *6 (S.D.N.Y. Mar. 31, 2014) ("Courts have repeatedly held that including boilerplate language alleging the existence of a policy, without factual allegations to support it, is not enough at the pleading stage."); *Hobbs v. Police Officers of N.Y.C.*, No. 10-CV-5717, 2014 WL 502030, at *8 (S.D.N.Y. Feb. 6, 2014) (report and recommendation) (holding that the plaintiff's "bare allegations" that the defendants "created, enacted, . . . put into effect[,] and maintained an illegal policy" were insufficient to establish personal involvement (alteration omitted)); *Koehl v. Bernstein*, No. 10-CV-3808, 2011 WL 2436817, at *19 (S.D.N.Y. June 17, 2011) ("[C]onclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement."), *adopted by* 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011); *Pravda v. City of Albany*, 956 F. Supp. 174, 182 (N.D.N.Y. 1997) (finding the plaintiff's "conclusory allegations that [the] [d]efendants . . . were responsible for setting County policy" were "insufficient to establish the personal involvement of the[] individual [d]efendants").

Plaintiff's newly added allegation that Schaarschmidt "made a policy restricting who can and can't go to religious feasts," (Am. Compl. ¶ 52), is wholly conclusory, offering no additional facts demonstrating the existence of such a policy or that Schaarschmidt had any involvement in its creation or maintenance, and therefore "cannot sustain a claim of personal involvement" in the constitutional violation, *Koehl*, 2011 WL 2436817, at *19 (collecting cases). Additionally, because Plaintiff adds no new allegations regarding Freebern's personal involvement in creating or maintaining such a policy, Plaintiff's claim against Freebern fails for the same reasons that it was dismissed in the Court's March 30, 2018 Opinion. (*See* Opinion 31–33.)

In his Opposition, Plaintiff points to a Department of Corrections and Community Supervision ("DOCCS") policy, Directive 4202, arguing that it requires an individual "to be registered to a specific religion to attend services in that prayer group." (Pl.'s Mem. 6.) Plaintiff is mistaken. DOCCS Directive 4202 states, "[o]rdinarily an inmate may attend only the religious program of his or her designated religion as noted in facility records. However, it is acceptable for those who desire to learn more about the religious practices of another faith to request permission to attend up to three classes/services per year from the Chaplain of that faith group." (DOCCS Dir. 4202 § VI(B)(3).) Even assuming arguendo that such a policy applies to MHFPC, the policy itself does not authorize disparate treatment of individuals who practice different religions, nor does it necessarily bar individuals from attending services of another religion under all circumstances. More importantly, Plaintiff has nowhere alleged that Schaarschmidt or Freebern established it.

To the extent Plaintiff argues that Schaarschmidt or Freebern instituted a policy in *violation* of Directive 4202, he has alleged no facts in support of his contention. Rather, he states that he "sent a letter to Defendant Freebern with a copy to Defendant Schaarschmidt" indicating

that Directive 4202 was not being followed.  (Pl.'s Mem. 6.)  However, Plaintiff made the same

argument in his opposition to Defendants' original Motion To Dismiss, (*see* Pl.'s Orig. Mem. 8–

9), and the Court nevertheless found Plaintiff failed to establish personal involvement, (*see*

Opinion 31 ("The allegation that Freebern and Schaarschmidt received Plaintiff's letter

complaining of unconstitutional conduct, without more, does not plausibly allege that they were

informed of the violation through a report or appeal and failed to remedy the wrong.")).  *See*

*Houston v. Schriro*, No. 11-CV-7374, 2014 WL 6694468, at *14 (S.D.N.Y. Nov. 26, 2014)

("[I]gnoring a prisoner's letter or complaint is insufficient to render an official personally

liable."); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (noting that "[c]ourts in

this circuit have said that the receipt of letters or grievances, by itself, does not amount to

personal involvement" and listing cases).

    The Court finds that Plaintiff's Amended Complaint still fails to sufficiently allege the

personal involvement of Freebern and Schaarschmidt.  Plaintiff's claims based on prevention of

his attendance at the Eid ul-Fitr feast are therefore dismissed.

### 2.  Eighth and Fourteenth Amendment Claims

    Defendants argue Plaintiff has failed to state an Eighth Amendment claim for cruel or

unusual punishment because he was not a convicted prisoner.  (Defs.' Mem. 15.)  The Court

agreed in its March 30, 2018 Opinion, finding that "[t]he Eighth Amendment applies only to

'punishment,' and as 'an insanity acquittee . . . was not convicted, he may not be punished.'"

(Opinion 35 (quoting *Lombardo*, 2008 WL 2543573, at *9).)  However, the Court also noted that

"[i]ndividuals involuntarily committed to state custody, such as Plaintiff, have constitutionally-

protected liberty interests in adequate food, shelter, clothing, medical care, and conditions of

reasonable care and safety," (*id.* (quoting *Vallen v. Plan*, No. 15-CV-703, 2016 WL 482026, at *3

(E.D.N.Y. Feb. 4, 2016))), and therefore analyzed Plaintiff's deliberate indifference claims "under the Due Process Clause of the Fourteenth Amendment rather than under the Cruel and Unusual Punishments Clause of the Eighth Amendment," (*id.* at 36). As the Court observed, "Plaintiff's rights under the Due Process Clause are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" (*Id.* (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).)[13]

### a. Applicable Law

To state a Due Process claim relating to conditions of confinement, Plaintiff must plausibly allege "both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a [mens rea] element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (italics omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).[14] "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Thus, prison officials violate the Constitution when they deprive an inmate of his "basic human needs" such as food, clothing, medical care, and safe and sanitary living conditions. *Id.* (quotation marks omitted). "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves

---

[13] Until recently, "[c]laims for deliberate indifference to a . . . serious threat to the health or safety of a person in custody [were] analyzed under the same standard irrespective of whether they [we]re brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). However, the Second Circuit's recent decision in *Darnell*, 849 F.3d 17, overruled *Caiozzo* "to the extent that it determined that the standard for deliberate indifference is the same under the Fourteenth Amendment as it is under the Eighth Amendment." *Id.* at 35.

[14] In *Darnell*, the Second Circuit indicated that this prong should be referred to the "mens rea prong," rather than the "subjective prong," to prevent confusion. *See Darnell*, 849 F.3d at 29 (italics omitted).

must be evaluated in light of contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d

54, 57 (2d Cir. 2012) (alteration and quotation marks omitted). The Court must consider the

"severity and duration, on a case-by-case basis." *Darnell*, 849 F.3d at 30. Moreover, conditions

of confinement may be aggregated to rise to the level of a constitutional violation, but "only

when they have a mutually enforcing effect that produces the deprivation of a single, identifiable

human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)

(noting that "low cell temperature at night combined with a failure to issue blankets" may

establish an Eighth Amendment violation).

For claims specifically alleging deliberate indifference to medical needs, "the alleged

deprivation of adequate medical care must be sufficiently serious." *Spavone v. N.Y.S. Dep't of

Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quotation marks omitted). Analyzing this

objective requirement involves two inquiries. "The first . . . is whether the prisoner was actually

deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. The second "asks whether the

inadequacy in medical care is sufficiently serious. This inquiry requires the [c]ourt to examine

how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or

will likely cause the prisoner." *Id.* at 280. "There is no settled, precise metric to guide a court in

its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d

158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has presented the following non-

exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1)

whether a reasonable doctor or patient would perceive the medical need in question as important

and worthy of comment or treatment, (2) whether the medical condition significantly affects

daily activities, and (3) the existence of chronic and substantial pain." *Id.* (quoting *Chance v.

Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Morales v. Fischer*, 46 F. Supp. 3d 239,

247 (W.D.N.Y. 2014) (same). Generally, the condition must be "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15-CV-7351, 2017 WL 2274485, at *3 (S.D.N.Y. May 24, 2017) (quoting *Chance*, 143 F.3d at 702).

The second requirement is the mens rea prong. "Prior to the Second Circuit's decision in *Darnell*, 849 F.3d 17, the second element—whether the defendant acted with a sufficiently culpable state of mind—was evaluated subjectively." *Ryan v. Cty. of Nassau*, No. 12-CV-5343, 2018 WL 354684, at *3 (E.D.N.Y. Jan. 10, 2018). However, in *Darnell*, in light of the Supreme Court's decision in *Kingsley v. Henderickson*, 135 S. Ct. 2466 (2015), the Second Circuit held that when a claim arises under the Fourteenth Amendment, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *see also Ryan*, 2018 WL 354684, at *3 (same); *Charles v. County of Orange*, No. 16-CV-5527, 2017 WL 4402576, at *10 (S.D.N.Y. Sept. 29, 2017) (same). "In other words, the second element of a deliberate indifference claim under the Fourteenth Amendment 'is defined objectively,' and a plaintiff is not required to show subjective awareness by the defendant that '[his] acts (or omissions) have subjected the pre-trial detainee to a substantial risk of harm.'" *Ryan*, 2018 WL 354684, at *3 (quoting *Darnell*, 849 F.3d at 35).[15] Despite the slightly lower standard articulated

---

[15] While *Darnell* involved claims of unconstitutional conditions of confinement, several courts in the Second Circuit have extended *Darnell*'s holding to claims of deficient medical treatment. *See, e.g.*, *Ryan*, 2018 WL 354684, at *3 & n.1 (extending *Darnell* to claims of deficient medical treatment); *Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *3 (S.D.N.Y. Sept. 30, 2017) (same); *Grimett*, 2017 WL 2274485, at *4 n.2 (same); *see also Charles*, 2017 WL 4402576, at *10 ("This standard for deliberate indifference applies to any underlying violation of the due process clause, such as for maintaining unconstitutional

in *Darnell*, which is akin to objective recklessness, "any § 1983 claim for a violation of due process requires proof of a mens rea greater than mere negligence." *Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *3 (S.D.N.Y. Sept. 30, 2017) (quoting *Darnell*, 849 F.3d at 36) (italics omitted); *see also Ryan*, 2018 WL 354684, at *3 (same); *Grimmett*, 2017 WL 2274485, at *4 (same). A detainee must prove that an official acted intentionally or recklessly, and not merely negligently. *Darnell*, 849 F.3d at 36.

The Court construes Plaintiff's Amended Complaint as alleging due process violations based on three events: (1) Rollins not allowing Plaintiff to shave and withholding medication; (2) Garcia giving Plaintiff an "X"; and (3) Dr. Baxi subsequently increasing Plaintiff's medication. The Court will address each in turn.

### b. Rollins Denying Plaintiff a Shave and Withholding Medication

Defendants argue that Rollins preventing Plaintiff from shaving on one occasion does not amount to a constitutional violation, and that Plaintiff failed to allege that anyone prevented him from taking his medication. (Defs.' Mem. 17.) The Court previously dismissed Plaintiff's claim based on denial of a shave on one occasion on the basis that "Plaintiff has failed to satisfy the objective prong, because he has not alleged a deprivation of his 'basic human needs' from being denied a shave on one occasion." (Opinion 40 (quoting *Walker*, 717 F.3d at 125).) The Court dismissed Plaintiff's claim based on withholding his medication because Plaintiff did not allege that Rollins did not allow him to take his medication; "[r]ather, Plaintiff stated he refused his medication until he shaved" and "that he was given his normal medication at around 9:35." (*Id.* (quotation marks omitted).)

---

conditions of confinement or failing to provide adequate medical care to a person in state custody, 'because deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment.'" (quoting *Darnell*, 849 F.3d at 33 n.9)).

Plaintiff has added no new allegations to his Amended Complaint pertaining to this claim. Therefore, the Court dismisses this claim for the same reasons it was previously dismissed. (*Id.* at 40.)

### c. Garcia Giving Plaintiff an "X"

Defendants argue that Plaintiff's Due Process claim against Garcia should be dismissed because Plaintiff has not alleged a deprivation of any constitutionally protected interest. (Defs.' Mem. 17–18.) The Court agreed with this argument in its Opinion, finding that "Plaintiff has not alleged that the loss of his 'privilege level' deprived him of any constitutionally-protected liberty interests," nor that the loss "posed an unreasonable risk of serious damage to his health." (Opinion 41.) Plaintiff's only new allegation with respect to this claim is that "Plaintiff never threatened Defendant Garcia, but believes Garcia was being malicious." (Am. Compl. ¶ 44.) In his Opposition, Plaintiff also argues that his actual statement to Garcia was not a threat, and that Garcia maliciously misconstrued it as one. (*See* Pl.'s Mem. 8.) However, Plaintiff's belief that Garcia acted with malice does not make the underlying conduct a constitutional violation. *See Paul v. Davis*, 424 U.S. 693, 699 (1976) (noting that not "every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' establishes a violation of the Fourteenth Amendment," but rather, "only those acts which deprived a person of some right secured by the Constitution or laws of the United States" state a constitutional claim). Even assuming Plaintiff did not in fact threaten Garcia and that Garcia still gave Plaintiff an "X," Plaintiff still has not established that the loss of his privilege level infringes on a "constitutionally-protected liberty interest[] in adequate food, shelter, clothing, medical care, [or] conditions of reasonable care and safety" that would give rise to a substantive due process claim. *Vallen*, 2016 WL 482026, at *3–4.

Plaintiff arguably also asserts a procedural due process claim for failure to provide him with constitutionally sufficient process before reducing his privileges. "Procedural due process requirements only impose constraints on state governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fourteenth Amendment." *Barna v. Hogan*, 964 F. Supp. 52, 57 (D. Conn. 1997) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)); *see also Williams v. Temple*, 349 F. App'x 594, 595 (2d Cir. 2009) ("[A] prisoner has the right to procedural due process before the deprivation of a liberty interest."); *Zimmerman v. Burge*, No. 06-CV-176, 2008 WL 850677, at *2 (N.D.N.Y. Mar. 28, 2008) (noting that a prisoner "cannot state a claim for procedural due process without first establishing that he has been denied a liberty or property interest"). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that the Constitution "did not require that [disciplinary restrictions] within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000) (quoting *Sandin*, 515 U.S. at 484); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) ("A prisoner's liberty interest is implicated by prison discipline . . . only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").

Although determination of "whether a plaintiff's confinement satisfies the 'atypical and significant hardship' requirement involves factual determinations," *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000), Plaintiff has not alleged *any* confinement or other specific deprivation of a protected liberty interest as a result of receiving an "X." Plaintiff explains in his Amended Complaint that "[a]n 'X' is a loss of privileges of the current level that a person is on. There are

three levels of privileges[:] entry, silver, and gold levels." (Am. Compl. ¶ 44 n.29.) But Plaintiff does not specify what type of privileges correspond to each privilege level, or indicate which level he was reduced to by receiving an "X"; nor does he allege that the "X" impacted any constitutionally-protected right beyond the First Amendment right already discussed above. Although "'there is no bright-line rule regarding the length or type of sanction' that meets the *Sandin* standard," *Alvarado v. Kerrigan*, 152 F. Supp. 2d 350, 354 (S.D.N.Y. 2001) (quoting *Colon*, 215 F.3d at 231–32), Plaintiff cannot state a procedural due process claim without alleging some specific deprivation of his liberty that departs from "the ordinary incidents of prison life," *Colon*, 215 F.3d at 230. *See Williams v. Temple*, 349 F. App'x 594, 595 (2d Cir. 2009) (finding summary judgment in favor of the defendant appropriate where there was "no indication" that the plaintiff's "placement on limited privilege—which lasted from approximately April 13, 2005, to May 25, 2005—rose to the level of an 'atypical and significant hardship'" (quoting *Palmer v. Richards*, 364 F.3d 60, 64–65 (2d Cir. 2004)); *see also Thompson v. LaClair*, No. 08-CV-37, 2009 WL 2762164, at *5 (N.D.N.Y. Aug. 25, 2009) ("Courts considering inmate claims regarding denial of participation in or access to prison programs or privileges under *Sandin* have uniformly concluded that inmates do not enjoy a protected liberty interest in such aspects of prison life." (collecting cases)); *Alvarado*, 152 F. Supp. 2d at 354 (noting that "the Second Circuit recently suggested that confinement for a period of less than 101 days would not constitute an atypical and significant hardship" (citing *Colon*, 215 F.3d at 231–32)). Therefore, Plaintiff's due process claim is dismissed.

### d. Dr. Baxi Increasing Plaintiff's Medication

Defendants argue that Plaintiff's disagreement with Dr. Baxi regarding the increase of his medication should be dismissed because it does not rise to the level of a constitutional violation.

(Defs.' Mem. 18–19.)  The Court dismissed this claim from the original Complaint on the basis

that "Plaintiff's claims boil down to nothing more than a dispute with Dr. Baxi over the treatment

he has received," and that "such disagreement regarding the particularities of his treatment is

insufficient to state a claim."  (Opinion 42.)  *See Chance*, 143 F.3d at 703 ("It is well-established

that mere disagreement over the proper treatment does not create a constitutional claim.");

*Vallen,* 2016 WL 482026, at *3–4  ("[The] [p]laintiff's allegations [regarding change in medicine

dosage] make clear that while he may have disagreed with the course of treatment, [the]

[d]efendants were not deliberately indifferent to [the] [p]laintiff's medical needs."); *Nelson v.

Deming*, 140 F. Supp. 3d 248, 262 (W.D.N.Y. 2015) (dismissing deliberate indifference claim

because the "[p]laintiff's disagreement with th[e] course of treatment does not amount to

deliberate indifference by [the] [d]efendants"); *Washington v. Westchester Cty. Dep't of Corr.*,

No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the

ultimate decision of whether or not to administer a treatment or medication is a medical

judgment that, without more, does not amount to deliberate indifference."); *Idowu v. Middleton*,

No. 12-CV-1238, 2013 WL 4780042, at *9 (S.D.N.Y. Aug. 5, 2013) ("[The] [p]laintiff's

disagreement with [a defendant]'s diagnostic technique and medical judgment cannot provide the

basis for a deliberate indifference claim under the Eighth Amendment."); *Sonds v. St. Barnabas

Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over

medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for

specialists or the timing of their intervention, are not adequate grounds for a [§] 1983 claim.

These issues implicate medical judgments and, at worst, negligence amounting to medical

malpractice, but not the Eighth Amendment.").

Plaintiff includes only one new allegation with respect to this claim, namely that "Defendant Dr. Baxi took Plaintiff to court on November 5, 2015 for medication over objection. Prior to that, Plaintiff told Dr. Baxi that his family has a history of diabetes, which is a long-term side-effect of Zyprexa." (Am. Compl. ¶ 47 n.30.) However, as explained in the Court's Opinion, to the extent Plaintiff seeks to challenge the New York State Court order authorizing changes to Plaintiff's medication over his objection, that claim is barred by the *Rooker-Feldman* doctrine. (*See* Opinion 41 n.23). *See also Capers v. Kirby Forensic Psychiatric Ctr.*, No. 13-CV-6953, 2016 WL 817452, at *3 (S.D.N.Y. Feb. 25, 2016) ("[W]here, as here, a plaintiff challenges a state court judgment authorizing medication over objection, the action is barred by the *Rooker-Feldman* doctrine."); *Meyers v. Health & Hosp. Corp.*, No. 13-CV-1258, 2014 WL 4160796, at *3 (E.D.N.Y. Mar. 28, 2014) (finding *Rooker-Feldman* doctrine barred review of state court order granting defendants' request to involuntarily medicate plaintiff over plaintiff's objections), *adopted by* 2014 WL 4161975 (E.D.N.Y. Aug. 19, 2014). The *Rooker-Feldman* doctrine precludes federal district courts from exercising subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This doctrine would therefore bar any claim Plaintiff might bring here to challenge the legality of the state court order. To the extent Plaintiff raises his state court litigation against Dr. Baxi and his family's history of diabetes as evidence of a constitutional violation, Plaintiff raised the same arguments in his Opposition to Defendants' original Motion To Dismiss, (*see* Pl.'s Orig. Mem. 9), and the Court nevertheless found that Plaintiff "failed to plead a 'substantial departure from accepted professional judgment, practice, or standards," (Opinion 42). Therefore, for the same

reasons set forth in the Court's March 30, 2018 Opinion, this claim is dismissed as to all Defendants.[16]

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. Because this is the second adjudication of Plaintiff's claims on the merits and he has failed to state a claim, the dismissal is with prejudice. Even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012), *aff'd*, 523 F. App'x 32 (2d Cir. 2013). Because the Court finds that further amendment would be futile, Plaintiff's claims are dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 65), mail a copy of this Opinion to Plaintiff, and close this case.

SO ORDERED.

Dated: March 11 , 2019
      White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[16] Because the Court has dismissed all of Plaintiff's claims, the Court declines to address the issue of Defendants' qualified immunity at this time. (Defs.' Mem. 22–24.) Additionally, to the extent Plaintiff seeks to renew his RLUIPA claims, which are not included in the Amended Complaint but are mentioned in passing in Plaintiff's Opposition, (*see* Pl.'s Mem. 11), he asserts no new facts that would change the Court's prior ruling dismissing these claims because "RLUIPA does not authorize claims for monetary damages against state officers," and, with respect to his claims for injunctive relief, because his Free Exercise claims were dismissed on the merits, (*see* Opinion 35 & n.19). Plaintiff's RLUIPA claims are therefore dismissed.